314 So.2d 116

**Huey E. MACKEY, alias**

v.

**STATE.**

**5 Div. 264.**

Court of Criminal Appeals of Alabama.

April 1, 1975.

Rehearing Denied April 22, 1975.

Richard D. Lane, Auburn, for appellant.

William J. Baxley, Atty. Gen., and Eric A. Bowen, Asst. Atty. Gen., for the State.

BOOKOUT, Judge.

Forgery—10 years.

Witness Wayne Manning testified he was manager of Belk-Hudson Company in Opelika on February 1, 1974. He stated a black male made a purchase from his store and cashed a payroll check. He testified he approved the check, that it was presented for payment, but was not paid, but he could not identify the person who gave him the check in the store.

Kenneth Hill testified that appellant and John Fikes came to his home the latter part of January, 1974, and asked if they could borrow Hill's driver's license, that they would pay him for the use of it. He gave his driver's license to Mackey, and Mackey and Fikes left. The next day, around 4:00 P.M., he started to Mackey's house and met him on the way. Mackey handed him the license and $20.00 and told him he would get the other $20.00 the next day from Fikes. He testified that he never authorized appellant to sign his name to any document at any time.

Captain Charles Beasley, an Opelika City Detective, stated that he investigated the forgery and placed Huey Mackey under arrest. He testified that Mackey made a statement, and at that time the jury was excused from the courtroom, and a hearing was held outside their presence. Counsel for appellant then objected that the State had not established a *corpus delicti*, therefore, it would be premature to admit a confession, that the statement was not volun-

tary, that appellant had no knowledge of his rights, and further that the statement concerned other offenses and crimes that had occurred.

At this hearing, Captain Beasley testified that he had informed Mackey fully of his rights and that Mackey had been given his rights from a form which Mackey signed. Beasely testified that Mackey had given him an oral statement which he reduced to writing. Beasley testified that before any questions were asked, he told Mackey he must understand his rights, that he had a right to remain silent; anything he said could be used against him in court; that he had a right to talk to a lawyer for advice before any questions were asked and to have the lawyer with him during questioning; if he could not afford a lawyer, he would be appointed one before any questioning if he wished; if he desired to answer questions then without a lawyer present, he would still have the right to stop answering at any time; he would have the right to stop answering at any time until he talked to a lawyer; that he did not offer the defendant any reward, hope of reward, nor make any threat or promise as an inducement to obtain a statement from the defendant. Captain Beasley testified he had ascertained the appellant to be twenty-one years of age with a twelfth grade or high school education, that he asked if appellant understood the rights, and he indicated that he did, that appellant was looking at the rights form at the time Captain Beasley was explaining it to him, and no questions were asked about it. Appellant signed the rights form and signed the statement and initialed each page.

Captain Beasley testified that he first advised Mackey of his rights at about 10:27 A.M. in regard to all the statements he was to obtain from him, that the statement in this particular case was obtained around 1:40 P.M. Appellant was being questioned about several forgeries by the detectives. Beasley stated that during the 1:40 P.M. statement, Mackey started mentioning a lawyer, that he immediately stopped questioning Mackey and asked if he wanted to call a lawyer and to call his mother, but Mackey said no he did not.

Appellant Huey Mackey was then sworn and testified for the limited purpose concerning the admissibility of the statement in question, which testimony occurred out of the presence of the jury. He testified that he had looked over the rights form and had signed it, but did not recall whether it was read to him or not. He said he was questioned from around 10:30 A.M. through lunch without having any lunch. He said the police took one statement in the morning and one in the afternoon, that before the statement at 1:40 P.M. was taken, he was told that anything he said could be used against him in court. He did not remember his rights being read to him but once and that was the first time in the morning. He said that before the 1:40 P.M. statement he was not told that he had a right to stop answering questions. He said he understood everything that was said to him at 10:27 A.M., but did not understand at 1:40 P.M. that he did not have to talk to Captain Beasley anymore if he did not want to. He said he told Captain Beasley that he wanted to talk to a lawyer, but does not remember what time. He graduated from high school and learned to read and write and knew the meaning of the words, "question," "rights," "lawyer," "stop," and "answer."

In answer to the court's questions, appellant said he told Captain Beasley he wanted to stop and get a lawyer, but Beasley told him he did not need a lawyer since he had already made a statement. He said Captain Beasley's conversation with him and the statements taken were about more than one forgery of different checks, but Captain Beasley did not tell him that he was going to try to take more than one statement from him.

Captain Beasley was recalled to the stand, and his testimony was essentially the same as his earlier testimony. Trial counsel for appellant contended that appellant was confused by the questioning and that

he should have been advised of his constitutional rights each time before being questioned on the separate forgeries. The trial court ruled that the statement was voluntary and properly admissible, the jury returned to the courtroom and Captain Beasley testified as to the statement.

Captain Beasley testified as to obtaining the check from the manager of Belk-Hudson in the amount of $153.00. The check was payable to Kenneth Hill and was issued on Stinson's Texaco and purportedly signed by William R. Stinson and dated February 1, 1974. The check was endorsed on the reverse side purportedly by Kenneth Hill.

Willie James Stinson testified that he was occupied as a spray painter on February 1, 1974, in Opelika, that from September, 1972, through June, 1973, he was involved in a business named Stinson's Texaco, but closed it in June of 1973. He said he did not know the defendant personally, nor had he ever given the defendant a check on the account of Stinson's Texaco Service Station. He said that appellant had never worked for him, and he had never given the appellant authority to sign his name. He testified that the signature, "William R. Stinson," on the check in question was not his signature. He said he did not know who signed his name or endorsed it and that it was a personal check.

The State recalled Kenneth Hill to the stand, and he again testified as to letting appellant and John Fikes use his driver's license. He stated that he did not sign his name, Kenneth Hill, to the check in question. He said he never authorized the appellant to sign his name on any check. The State rested its case, and the defense made a motion to exclude the State's evidence out of the presence of the jury.

The appellant's evidence consisted of testimony by Rev. P. W. Wallace, who testified that he knew Huey Mackey and his general reputation in the community where he lives and that it was good.

I

Appellant contends that the statement or confession given to the officers was inadmissible in that appellant did not knowingly and intelligently waive his privilege against self-incrimination and his right to retain counsel or have counsel appointed. Appellant contends that the evidence does not show sufficient explanation of appellant's rights and does not show affirmatively a knowing, voluntary and intelligent waiver thereof. We do not agree.

■ We do not find error in the trial court's ruling admitting the defendant's statement to Captain Beasley into evidence. Captain Beasley testified extensively as to the *Miranda* warning and other rights given the appellant. He was examined on voir dire outside the presence of the jury and was examined and cross examined before the jury as well. The appellant testified outside the presence of the jury and although his testimony was somewhat conflicting in part with Captain Beasley's, it is apparent he was informed of his rights and voluntarily gave the statement in question. We believe the testimony of Captain Beasley was sufficient to justify the trial court's ruling in this regard. See Crowe v. State, 54 Ala.App. 121, 305 So.2d 396; Elrod v. State, 281 Ala. 331, 202 So.2d 539; Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618.

II

■ Counsel for appellant contends in his brief that a confession without independent evidence of *corpus delicti* is not sufficient to support a conviction. His contention is that the *corpus delicti* must be first proved before the statement or confession can be admitted in evidence. Counsel for appellant, on oral argument conceded that the *corpus delicti* had been established in this case prior to admission into evidence of appellant's inculpatory statement. The evidence prior to admission of the confession established that the

crime of forgery had been committed. Appellant's confession, along with other evidence at the trial, established that it was the appellant who committed the crime. In the case of Bridges v. State, 284 Ala. 412, at page 417, 225 So.2d 821, at page 827, it was stated:

"... The oral confession of the defendant was found to have been voluntarily given. It is inadmissible for the purpose of prima facie proof of the corpus delicti. Shelton v. State, 217 Ala. 465, 117 So. 8. But, 'inconclusive facts and circumstances tending prima facie to show the corpus delicti may be aided by the admissions or confession of the accused so as to satisfy the jury beyond a reasonable doubt, and so to support a conviction, although such facts and circumstances, standing alone, would not thus satisfy the jury of the existence of the corpus delicti. Matthews v. State, 55 Ala. 187, 195; Ryan v. State, 100 Ala. 94, 95, 14 So. 868.' Hill v. State, 207 Ala. 444, 446, 93 So. 460, 462. The facts of this case bring it squarely within this rule."

See also Knight v. State, 50 Ala.App. 457, 280 So.2d 163, and King v. State, 49 Ala.App. 111, 269 So.2d 130.

### III

Counsel for appellant contends in his brief that an officer questioning a witness on multiple offenses must give a complete *Miranda* warning before questions are asked on each offense. The State contends it is not necessary for officers to give a *Miranda* warning separately on each forgery they are inquiring into where the defendant is being questioned on a series of related offenses at one time. However, on oral argument, counsel for appellant stated to this Court that he was not now contending that a complete *Miranda* warning must be given separately on each forgery, but rather was contending that under the circumstances of this case there was not a knowing and intelligent waiver of the appellant's privilege against self-incrimination.

■ We do not read Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, to require a complete warning to a defendant separately on each possible charge which may arise while he is being questioned on a series of related offenses at one time. We have already herein disposed of the question of the voluntariness of the appellant's confession and the sufficiency of the *Miranda* warning given him. (See Tr. page 38.)

### IV

The trial court gave defendant's written requested charges number 3, 5, 6, 7, 8, 10 and 11. The court refused to give charges number 1, 2, 4 and 9.

■ Charges 1 and 2 are affirmative charges and were properly refused by the trial judge since a prima facie case had been made by the State. Charge number 4 was adequately and substantially covered in other given charges and in the court's oral charge. Charge number 9 is adequately and substantially covered in given charges number 10 and 11 and in the court's oral charge. We, therefore, find no error in refusal of the above enumerated charges requested by the defendant.

There were no objections or exceptions to the court's oral charge, and upon completion, defense counsel announced, "Satisfied, Your Honor."

### V

Appellant filed a motion for a new trial on July 2, 1974; a hearing was held thereon on July 11, 1974, and the trial court entered an order denying the same on July 15, 1974.

The motion for a new trial contained eight grounds. The grounds may be categorized as: attacking the sufficiency of the evidence; failure of the court to direct

a verdict for the defendant; overruling the defendant's objections to the admissibility of his confession into evidence; overruling defendant's objection to the trial court's asking the jury venire whether or not any of them had a fixed opinion against penitentiary punishment; and, refusal to grant defendant's motion to exclude the State's evidence at the conclusion of the defense's case in chief.

■ We find the evidence sufficient to support the finding of the jury. We, likewise, have already found the evidence relating to the confession to be sufficient to sustain the trial court's ruling as to its admissibility. The record does not disclose that the defense made a motion to exclude the State's evidence or to direct a verdict for the defendant at the conclusion of the defense's case in chief as set out in ground number 8 of the motion for a new trial. Neither was the prior motion to exclude renewed at that time. The motion to exclude came at the conclusion of the State's case in chief, and the evidence is ample to sustain the trial court's denial of that motion.

■ Finally, the appellant contended that the trial court erred in asking the jury venire whether any of them had a fixed opinion against penitentiary punishment. We find the trial court was properly qualifying the jury venire by asking that question, which is set out as a ground of challenge in Title 30, Section 57, Code of Alabama 1940. We find no reversible error in the record.

Affirmed.

All the Judges concur.

### ON REHEARING

BOOKOUT, Judge.

### I

■ The appellant contends his statement was not admissible into evidence pursuant to Chandler v. State, 283 Ala. 29, 214 So.2d 306 (1968). Appellant contends that since several persons were present when the statement was taken by Captain Beasley, a showing that Captain Beasley made no threats or gave no promises of reward was insufficient to establish that the statement was voluntary, in that *Chandler* requires a predicate that none of the law enforcement officers nor anyone in their presence made any promises or threats.

The testimony in the instant case establishes, at the beginning of the interview, the presence of the appellant Huey Mackey, his accomplice John T. Fikes, the mother of John T. Fikes, Captain Beasley and Detective Gary R. Knight.

At 10:27 A.M., the appellant's rights were explained to him, and he signed a "Waiver of Rights" form, which was witnessed by Knight and Beasley at 11:00 A.M. that date, February 3, 1974. The last sentence in that statement immediately above the appellant's signature is, "No promises or threats have been made to me and no pressure or coercion of any kind has been used against me." (State's Exhibit No. 2, R. p. 81).

The record establishes that at the time the appellant's confession was given to Captain Beasley, at 1:40 P.M. that date, no one was present but the appellant and Beasley. The signature of the appellant was witnessed only by Beasley, appearing on R. p. 85.

On voir dire examination of Captain Beasley, counsel for appellant asked:

"Q. Were they all present at the time you took this statement at 1:40 from Mr. Mackey?

"A. At the time I took the written statement, no, sir. They weren't. They were over in the other office."

The record establishes that while Captain Beasley was taking Mackey's statement, Detective Knight was taking Fikes' statement in another office.

We are of the opinion that the record sufficiently sustains the trial court's ruling as to the voluntariness of the appellant's statement.

## II

The appellant contends that during the questioning, he requested an attorney, but was told by Captain Beasley that he had already given a statement and, therefore, did not need one. This was emphatically denied by Captain Beasley during several parts of his testimony. On R. p. 52, Captain Beasley was questioned by the court as follows:

"THE COURT: Did you tell him that you would stop and get him a lawyer at any time he wanted to?

"THE WITNESS: Yes, sir. Told him he could call a lawyer and he said he didn't want to call one and I said, 'Do you want to call your mother and have her to call you a lawyer?' And he said, no, he didn't.

"THE COURT: Did you tell him that if he was unable to pay for a lawyer that the Court, State would appoint one?

"THE WITNESS: Yes, sir.

"THE COURT: The Court would appoint one for him free of charge?

"THE WITNESS: Yes, sir."

Captain Beasley steadfastly gave essentially the same answer under repeated questioning on this point. We believe the testimony in this regard is ample to support the finding of the trial court that the appellant made a knowing, intelligent and understanding waiver of his rights.

We have carefully reviewed the contentions of the appellant on application for a rehearing and do not find them to merit a reversal of our prior decision.

Opinion extended, application overruled.

All the Judges concur.