The appellant was convicted of the capital felony of "robbery or attempts thereof when the victim is intentionally killed by the defendant." Section 2 (b), Act No. 213, Acts of Alabama 1975, approved September 9, 1975. [Now § 13-11-2 (a)(2), Code of Ala. 1975] The jury filed punishment at death, and the trial court after a hearing on aggravating and mitigating circumstances sentenced the appellant to death.
The facts of the case are set out in detail in the companion case of Horsley v. State, Ala.Cr.App., [1 Div. 931, October 3, 1978]. However, for the purposes of this opinion, a brief recitation of the facts will be set out.
The victim of the appellant's vicious crime was a sixteen-year-old girl named Naomi Rolon. On November 25, 1976, she *Page 27 
was driving across town in Hudson, North Carolina, to visit her father who was in a local hospital. She was abducted before reaching her destination by the appellant and his companion, Edward Horsley, both of whom were escapees from a North Carolina prison camp at the time. They took control of her automobile and drove to Charlotte, North Carolina, where they attempted to rape her and to choke her to death. They stripped her of all her clothing except her shoes and socks. She was stabbed with a knife in various parts of her body and then locked in the trunk of the automobile she had been driving. Baldwin and Horsley then drove the car through South Carolina to Atlanta, Georgia, where they spent the night. They next drove through Montgomery, Alabama, on Interstate Highway 85 and then proceeded to Camden, Alabama, located in Wilcox County. The victim remained locked in the trunk of the car during the entire trip.
In Camden, the appellant stole a pickup truck which contained a hatchet. Horsley drove the automobile, and the appellant drove the truck to an isolated spot in Monroe County. There they removed the victim from the trunk of the car, and Horsley attempted to run the car over her. After several unsuccessful attempts to kill the victim with the automobile, the appellant took the hatchet from the trunk and killed her with a blow leaving a gaping wound in the base of her neck. The two killers were later arrested in Lanett, Alabama, where they were traveling in the stolen truck. The automobile tag from the victim's car was found in the truck which appellant was driving. Both were transported to the Wilcox County Jail on the truck theft charge.
The appellant was well represented in this court by two outstanding members of the Monroe County Bar who filed briefs and argued the case as amicus curiae. The appellant was likewise well represented in the trial court by two different attorneys from Monroeville who were likewise highly capable.
 I
The only issue raised on appeal was whether the state of Alabama had jurisdiction to try the offense of aggravated robbery where the robbery took place in North Carolina, but the aggravating circumstance of intentionally killing the victim occurred in Alabama.
That issue was conclusively settled in the companion case ofHorsley v. State, supra, written by the eminent jurist and legal scholar, Retired Circuit Judge Leigh M. Clark, serving as a judge of this court pursuant to the provisions of Amendment No. 328 of the Alabama Constitution.
The crime of robbery when the victim is intentionally killed by the defendant does not consist of two separate and distinct offenses. It is a single offense beginning with the act of robbing or attempting to rob and ending with the act of intentionally killing the victim. Here, two separate acts or elements constitute but one single crime. Judge Clark made this clear in Horsley, supra, in stating:
 "Notwithstanding the importance of robbery as an essential element of the crime charged, it did not constitute the crime charged in the indictment or a crime proscribed by the death penalty statute. No crime proscribed by that statute falls short of an intentional killing. Each of the fourteen crimes enumerated in the statute has within it the culminating factor of an intentional homicide. The statute is for the prevention and punishment of homicides committed under legislatively determined aggravating circumstances. It is impossible to complete, to consummate, any of the fourteen crimes enumerated without the intentional[ly] taking of the life of a human being. . . ."
As in Horsley, supra, we find that the capital felony charged here began in North Carolina and ended in Alabama.
Title 15, § 92, Code of Ala. 1940 [now § 15-2-4, Code of Ala. 1975], states in pertinent part:
 "When the commission of an offense, commenced elsewhere, is consummated *Page 28 
within the boundaries of this state, the offender is liable to punishment here, although he was out of the state at the commission of the offense charged, if he consummated it in this state through the intervention of an innocent or guilty agent, or by any other means proceeding directly from himself; and the jurisdiction in such case, unless otherwise provided by law, is in the county in which the offense was consummated."
Thus, the Circuit Court of Monroe County, Alabama, had jurisdiction over the crime and the person of the appellant.
 II
Although only one issue is raised upon appeal, it is our statutory duty to search the entire record for error. Therefore, two other points raised only at trial have been considered.
During the course of the trial, prior to receiving any statements into evidence made by the appellant to law enforcement officers, the trial court allowed defense counsel to conduct a voir dire examination of the State's witnesses and of the appellant himself outside the presence of the jury. The appellant stated that he did not remember anyone reading theMiranda warning to him prior to giving a statement to the law enforcement officers at the Wilcox County Jail. He stated that he signed a waiver of rights form which enumerated the Miranda
warning, however, he said that it was handed to him and he was instructed to sign it, which he did without reading its contents.
The appellant stated that at the time he signed the waiver forms on March 15, 1977, and again on March 16, he signed the forms without reading them because he was instructed to do so. He stated that on March 16 he was handcuffed with someone standing behind him pulling his hair to make him sign the statement. He testified that he was threatened and beaten on that occasion by Sheriff Moody Maness and two deputies. He said, "They told me I didn't tell them where the car was, they was going to hang me, shoot me, beat me up; then they took handcuffs and handcuffed me to a bar and took an electric stick, the thing you stick cows with, and poked me with that." The appellant stated that a jail trusty had seen the officers pushing him and handcuffing him to the bars and "stuff like that."
Pledge Bennett, the Wilcox County Jailer, testified that the appellant was never threatened, hit, prodded with a cow prod, or mistreated in any way in his presence. Neither did he know of any mistreatment occurring outside of his presence.
James Moore testified that on the dates in question he was a trusty in the Wilcox County Jail. He saw the appellant in jail and was present during the fingerprinting of the appellant. He knew nothing about any threats to the appellant, neither did he see anyone hit, threaten to shoot, threaten to hang, or use an electric prod on the appellant.
James Smith testified that he was a cell-mate of the appellant in the Wilcox County Jail on March 15 and 16. On the times that appellant was questioned, he left the cell and was later returned to the cell. Smith never heard or saw any threat made to the appellant, nor saw anyone hit or mistreat him in any way. When the appellant was returned to his cell after making the statements, Smith did not see any bruise marks or beaten marks on him. He never saw any signs that the appellant had been beaten or mistreated.
Edward Headley, an Investigator for the Alabama State Troopers, testified that he was present on March 16 with Sheriff Moody Maness and Deputy Nathaniel Manzie when the appellant gave them a statement. He said that no one in his presence abused the appellant, threatened him, made promises to him, or told him it would be better for him if he made a statement or worse for him if he did not make a statement. He personally advised the appellant of his constitutional rights using the Miranda form. The appellant was also given an opportunity to read the form which he voluntarily signed. The witness testified to the same predicate for the introduction of a *Page 29 
statement made by the appellant on March 17.
The appellant was reexamined on voir dire wherein he admitted signing a waiver of rights form in connection with a statement he gave law enforcement officers on March 17. The appellant admitted that the rights form was read to him on March 17, however, he said that he informed the officers that he wanted to see his lawyer, but Investigator Headley told him to go ahead and sign the statement. He said Headley opened his coat and put his hand on his pistol, started pulling it out, and asked the appellant if he was going to sign the statement, so he did sign it.
Monroe County Sheriff Lenwood Sager testified that he was present on March 17 when Investigator Headley questioned the appellant. He stated that the Miranda rights were read to the appellant who seemed to understand them. The appellant was given an opportunity to read the statement which he signed. The witness testified that no one threatened the appellant in any way, either by actual violence or threats of violence and that the appellant never asked for an attorney.
J.C. Butler, an Investigator for the State of Alabama, testified that he was present during the questioning of the appellant on March 17. Neither he nor anyone in his presence physically abused, threatened, or offered any hope of reward or promise to the appellant to obtain a statement. No one told the appellant that it would be better for him if he made a statement or worse for him if he failed to do so. The witness stated that he identified himself to the appellant and advised him of his constitutional rights via the Miranda warning. The appellant stated that he understood each of the rights, was afforded an opportunity to read the waiver of rights form, but declined to do so, and then voluntarily signed it.
Sheriff Moody Maness of Wilcox County stated that he first came in contact with the appellant on March 15. At the time he talked with Baldwin on that date, neither he nor anyone in his presence committed any physical act to obtain a statement from the appellant. No one threatened the appellant nor made any promises to him. No one in his presence told the appellant it would be better for him to make a statement or worse for him if he failed to do so. The appellant was advised of his constitutional rights, which the witness then read into the record.
The Sheriff said that he talked to the appellant on March 16, the day after he had been advised of his constitutional rights. No one in his presence abused the defendant in order to obtain a statement. No one made a promise to the appellant nor threatened him. No one informed the appellant that it would be better for him to make a statement or worse for him if he did not. The appellant was again read his constitutional rights which are fully set out in the record. The appellant stated that he was willing to make a statement without talking to an attorney, and he then signed a waiver of rights form.
Sheriff Maness stated that he talked to the appellant about an automobile tag that had been found in the vehicle in which the appellant and Horsley were traveling when they were arrested. He asked the appellant about the disappearance of a girl from North Carolina who was supposed to have been in the car to which the tag belonged. He said the appellant first stated that the car had broken down in Atlanta and that he knew nothing about the girl. Later the appellant told them that when the car broke down he caught a bus from Atlanta to Montgomery and then hitchhiked to Camden where he stole a vehicle. The appellant told the officers that he had left the girl tied up in a house in Atlanta.
The Sheriff then questioned Horsley and returned and informed Baldwin that their stories did not match — that Horsley stated that the girl was in the trunk of the vehicle in the area around Camden and that he would help the officers find it. The appellant then stated that he would go with the officers and help them find the car and that the girl was in the trunk of the car, but had not been harmed. *Page 30 
Sheriff Maness, Investigator Headley, and Deputy Manzie, following the appellant's directions, drove him to the isolated area in Monroe County where the missing automobile was found. The tag was missing from the automobile, and the officers did not find the victim in the trunk. The appellant then told the officers to look in front of the car. There they found the dead, mutilated body of the victim.
On March 17, 1977, the appellant made a statement in the presence of Sheriff Maness, Sheriff Sager, and Investigator Headley which was tape recorded. The tape recording was admitted into evidence as State's Exhibit No. 9, and a typewritten transcript of the tape recording was admitted into evidence as State's Exhibit No. 10. We have listened to the tape recording of the appellant's confession and from inflections in his voice, the matter-of-fact and almost casual manner in which he relates the events, we are unable to detect even a hint of coercion. In fact, the appellant relates his part in the kidnapping, attempted strangulation, stabbing, attempted murder with the automobile, and the final act of slaughtering his helpless victim with no more emotion than if he had been describing the fixing of a flat tire on his automobile. The tape recording of the appellant's confession leaves one with the impression that he felt no remorse over the fact that he and his companion had treated this unfortunate, innocent victim with a brutality not found in animals and had mercilessly slaughtered this defenseless young girl.
We have carefully reviewed the record in this appeal, and we find first that the trial judge was not in error in finding the confession of the appellant to have been made voluntarily after having been fully apprised of his constitutional rights perMiranda v. Arizona, 284 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 94
(1966). The trial court heard testimony from numerous witnesses outside the presence of the jury concerning the Miranda
predicate and the predicate as to the voluntariness of the confession. Whether a confession is voluntary is a question to be determined by the trial court. Harris v. State, 280 Ala. 468, 195 So.2d 521 (1967). The trial judge need only be convinced from a preponderance of the evidence in order to find the confession to have been knowingly and voluntarily made.Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618
(1972). On many instances, we have stated that a trial court's finding that a confession was knowingly and voluntarily made will not be disturbed on appeal unless we are convinced that the conclusion reached by the trial judge was palpably contrary to the weight of the evidence. Smith v. State, Ala.Cr.App.,346 So.2d 382, cert. denied, Ala., 346 So.2d 385 (1977). Likewise, this court stated in McNair v. State, 50 Ala. App. 465 at 470,280 So.2d 171, 176 (1973), cert. denied, 291 Ala. 789,280 So.2d 177:
 ". . . Even where there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial judge need only be supported by substantial evidence and not to a moral certainty. . . ."
Secondly, the appellant contends that the corpus delicti was not proved by the State before the confession was admitted into evidence. The correct rule of law in Alabama is that the corpus delicti must be proved independently of the confession in order to support a conviction. Our Supreme Court in Bridges v. State,284 Ala. 412, at 417, 225 So.2d 821, 826 (1969), stated:
 "The oral confession of the defendant was found to have been voluntarily given. It is inadmissible for the purpose of prima facie proof of the corpus delicti . . . But, `inconclusive facts and circumstances tending prima facie to show the corpus delicti may be aided by the admissions or confession of the accused so as to satisfy the jury beyond a reasonable doubt, and so to support a conviction, although such facts and circumstances, standing alone, would not thus satisfy the jury of the existence of the corpus delicti.' . . ."
(Citations omitted.) *Page 31 
Also see: Mackey v. State, 55 Ala. App. 197, 314 So.2d 116
(1975), cert. denied, 294 Ala. 764, 314 So.2d 123.
In the instant case, we find that the corpus delicti was established independently of the appellant's confession. The appellant and his companion were arrested while driving a stolen truck which contained the license plate of the victim's car which was missing from North Carolina. The keys to the victim's car were also found in the possession of the appellant, who led officers to the location of the missing vehicle where they discovered the horribly mutilated body of the victim. Discovery of the body and the missing automobile from North Carolina was certainly sufficient evidence to support a reasonable inference that the automobile was brought into this state from the other state and that Naomi Rolon had been murdered, both due to the criminal agency of someone.Arnold v. State, 57 Ala. App. 172, 326 So.2d 700 (1976).
 III
After the jury returned a guilty verdict and fixed punishment at death, the trial court, pursuant to the capital felony statute, set a hearing for presentation of aggravating and mitigating circumstances. At that hearing, the State introduced the written transcript of a statement given by the appellant's accomplice, Edward Horsley, which related the details of the crime substantially as we have enumerated them at the beginning of this opinion. The State also introduced the juvenile record of the appellant reflecting his adjudication and delinquency based on a charge of assault with intent to rape. Likewise, the State introduced the adult record of the appellant reflecting a conviction and penitentiary sentence for robbery and a conviction for possession of marijuana.
The trial court then allowed the defendant to take the stand and be examined by his counsel for the purpose of showing any mitigating circumstances. When the appellant finished testifying, the trial court stated:
 "Brian Keith Baldwin, today is the day you have in court to tell this judge whatever is on your mind and as Mr. Owens has told you, now is your time to tell the judge anything that you feel like might be helpful to you in the position that you find yourself in. I want to give you every opportunity in the world that I know about."
In the course of the appellant's statement, he said, "I ain't saying I'm guilty but I might be guilty for murder but I ain't guilty for robbery down here. That's all I got to say." However, the court continued to question him to bring out any mitigating circumstances possible. Both the State and the defense then argued mitigating and aggravating circumstances to the trial court.
The court made findings which in pertinent part are as follows:
 ". . . The Court first considered the aggravating circumstances as set out in Title 15, Section 342 (8) of the 1940 Code of Alabama as amended:
 "(a) The Court finds that the capital felony or robbery in the course of which the victim was intentionally killed was committed by the defendant while he was under sentence of imprisonment in the state of North Carolina but from which he had escaped.
 "(b) The Court further finds that the defendant had previously plead (sic) guilty to a felony in the state of North Carolina involving the use of violence to the person of the victim and was sentenced to five years imprisonment in a North Carolina penitentiary as a youthful offender.
 "(c) The Court further finds that the defendant was previously charged in the state of North Carolina of the offense of kidnapping and rape, which said offenses were disposed of in juvenile proceedings by the defendant being adjudged delinquent by reason of the charge of assault to commit rape.
 "(d) The Court further finds that the capital felony was committed while the defendant was in the commission of robbery or flight after committing said crime of robbery. *Page 32 
 "(e) The Court further finds that under the circumstances of this case as revealed by the record, the capital felony was especially heinous or atrocious or cruel.
 "The Court now considers mitigating circumstances as described in Title 15, Section 342 (9) of the 1940 Code of Alabama as amended:
 "(a) The Court finds the only mitigating circumstances would be the age of the defendant at the time of the commission of the crime, to-wit, eighteen.
 "The Court having considered the aggravating circumstances and the mitigating circumstances and after weighing the aggravating and mitigating circumstances, it is the judgment of the Court that the aggravating circumstances far outweigh the mitigating circumstances and that the death penalty as fixed by the jury should be and is hereby accepted."
The trial court then sentenced the appellant to suffer death by electrocution as prescribed by law.
We have reviewed the aggravating and mitigating circumstances set out in the record and the trial court's findings relative to those circumstances. The appellant was given the opportunity to present any mitigating circumstance which he desired to the trial court. Alabama's capital felony act, supra, fully comports with Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954,57 L.Ed.2d 973 (1978), in that it does not preclude from consideration as a mitigating factor "any aspect of a defendant's character and record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence [of] less than death." After review of the hearing on aggravating and mitigating circumstances, we find no error on the part of the trial court in reaching the conclusion that the aggravating circumstances far outweigh the mitigating circumstances in this case. The sentence fits the crime.
AFFIRMED.
All the Judges concur.