LEIGH M. CLARK, Retired Circuit Judge.
Appellant was tried on a two-count indictment, one count charging that he burglarized a “shop, store or warehouse of C. D. Clark and Fannie E. Clark, d/b/a Clark’s Clothing Co.,” and the other charging him with grand larceny of several items of personal property of C. D. Clark and Fannie Clark, “d/b/a Clark Clothing Company,” from a storehouse, warehouse, shop or office. In the course of the deliberations of *551 the jury they made it known to the court that they had agreed on a verdict as to the grand larceny count but not as to the burglary count. The burglary count was then nol-prossed and the jury returned a verdict finding defendant guilty of grand larceny. The court sentenced him to imprisonment for ten years.
A major contention of appellant is that the court erred in not suppressing and in admitting the confession of the defendant.
According to the emphatic testimony of the defendant himself, his signed confession was not admissible. In his testimony, defendant makes a charge of gross misconduct on the part of the officers who obtained his confession. Defendant did not deny that he signed it, but he said that he did so by reason of violence that had been inflicted upon him and fear that he would be more seriously injured if he did not sign the confession. He also testified that the confession was not true. The confession[1] signed by him is as follows:
“Well, now, I’m going to tell you the truth about the whole thing, now, Officer. Now, I’m going to be a man about this thing now, cause y’all shoo got me in the wrong this time. O.K., I got with Frank Edwards and MacKnight about 12:00 tonight. We rode around a while and had a, you know, man, a few drinks. We were drinking some beer and some rum. But, man, now, I ain’t drunk. They talked about going to Clarks but, now am going to tell you the truth. I talked them out of it. Man, I said, y’all don’t go in that store, man. My old lady had told me before don’t go with them, but I wouldn’t listen to them. I stay at 464 Caroline Court, and I just don’t want to go home, man. I woke up and slipped out the back door so she wouldn’t hear me, you know, man. I met them down the street and got with them. When we got there, I told them that we needed a jack to bust out the window with and we got it out of Carlton Jones’ car from the trunk. Carlton, well, we were in Carlton’s car, a blue Eldorado. We got to the store and MacKnight broke out the window and I went in, me and Frank and MacKnight and Carlton Jones. I got a sweater and carried it out, that was the only thing that I got, but we stacked the stuff outside in a pile. MacKnight went in the back of the store and broke into the other building. Me and Frank Edwards and Carlton Jones went in the front. We got a load, but they decided to leave, so I left with them but then I decided to go back to get some more stuff, see. So, see, we had it outside in a pile but the police came, and I was still in the store, so, see, man, when I saw them I got scared, so I ran out the door and down the street, but like I ran into something and fell, that’s when the police caught me and told me not to move. So, man, I just laid there real still. I was afraid they were going to shoot me or something.”

“The above statement is true and correct to the best of my knowledge and memory. I have not been threatened or promised anything to give this statement. I give it on my own. I read and understand my rights.”
In contrast with the signed confession, defendant testified that he could not read or write, but that he could and did sign his name. He said that one of the officers beat him badly before he was confronted with the statement, that “he kept on beating me,” even after he had told the officer that he didn’t want to sign any statement and that he wanted someone to get him his lawyer, naming him. He said that he did not give the officers the names of the three whose names are found in the confession.
According to the testimony of defendant, he was in the vicinity of the store about 1:00 of the night of the burglary thereof, noticed that the store had been broken into and saw four white boys at the store, who *552 disappeared behind a nearby filling station and fire station about the time officers arrived. He said he did not know any of the white boys. He denied having been given any statements or warnings as to his constitutional rights, a typed statement signed by him to the contrary notwithstanding.
The officers charged by defendant with misconduct were as emphatic in their denial thereof in their testimony as was defendant in his charge. According to their testimony, he was given complete instructions and warnings as to his constitutional rights against self-incrimination and his right to an attorney without cost to him, he was not mistreated in any way and defendant’s confession was made without any actual or threatened violence. According to their testimony, there was no semblance of any coercion and the confession was understandingly and voluntarily given.
Perhaps no human being, other than the defendant and the particular witnesses, knows with certainty who was testifying truthfully and who was testifying falsely, but no one is in a better position to determine that question than the trial judge who observed the witnesses as they gave their testimony. Although the evidence may present the possibility of an erroneous determination by him, it is insufficient to justify such a conclusion on appeal.
Three witnesses called by the defendant testified that a day or two after his arrest there were knots, skinned places and bruises on him. An officer, a witness for the State, testified that when he saw defendant coming out of the front door of the burglarized store, defendant started running, ran into a parking sign and fell. He said that when defendant did so, he dropped a stereo cover that he was carrying at the time.
Appellant poignantly complains of what he terms, “the tone and atmosphere established” by the trial court on the hearing of defendant’s motion to suppress the confession. Difficult though it is for us to portray from the record the “tone and atmosphere” in such a way as to be fully understandable, we will endeavor to show what we consider the substance of the basis of appellant’s grievance in this respect. After a jury had been duly selected to try the case and the jury had been sworn, one of defendant’s two attorneys indicated to the court that he could like to present a matter out of the presence of the jury. Thereupon the following occurred:
“THE COURT: Would the Jury step in the Jury Room just a moment, please? “(Whereupon, the Jury retired to the Jury Room, and the following occurred outside the presence of the Jury:)
“THE COURT: All right, sir.
“MR. CARROLL: It is now 4:00 and I am expecting George Hutchinson to be here, probably within the next hour, I hope.
“THE COURT: Well, I am going to try this case this afternoon.
“MR. CARROLL: Well, what I was going to request, Judge, is that we have a Motion to Suppress involved in the thing.
“THE COURT: It will only take me about two minutes to hear it.
“MR. CARROLL: Well, I was going to present that, and I would think if we could change the order around and let George make the opening statement after the Motion to Suppress had been heard.
“THE COURT: It’s not going to take me but about two minutes. When is he going to be here? It’s five minutes to four, and I’ve got case, after case, after case, to try.
“MR. CARROLL: I understand, Your Honor.

Thereafter, the record shows about a two-page colloquy among the court and counsel for the parties largely with respect to when Mr. Hutchinson would be there and whether defendant and counsel would agree that the jury not be kept together during the trial. Thereupon, the jury was returned to the courtroom and informed by the court that there would be a brief recess. The record then continues:
“Whereupon, there was a brief recess for the Jury, and during the recess, the fol *553 lowing occurred outside the presence of the Jury:)
“THE COURT: You have a Motion to Suppress?
“MR. CARROLL: Yes, Your Honor. We call the Defendant, John Allen.

U »

Defendant was then sworn as a witness and upon direct examination was shown the typed confession and stated that he could not read but that he could read his name signed thereto. The court then questioned him as shown by the remainder of the record as to his testimony on the Motion to Suppress:
“THE COURT: Was this read aloud to you before you signed it?
“THE WITNESS: No, sir, it wasn’t.
“THE COURT: They didn’t read that to you?
“THE WITNESS: They read my name, and something—
“THE COURT: All right. Is that all you want to determine, whether it was voluntarily made?
“MR. CARROLL: Well, we’ve got two points—
“THE COURT: What is the other one?
“MR. CARROLL: The other point is that he was not given any rights whatsoever.
“THE COURT: All right. Nobody gave you any rights?
“THE WITNESS: Nobody gave me any rights and the Detectives beat me.
“THE COURT: All right, what is the next point?
“MR. CARROLL: He was not read his rights. He was beaten about the head and arms by one of the Detectives.
“THE COURT: Did they do that?
“THE WITNESS: Yes, sir, they did.
“THE COURT: What else happened?
“MR. CARROLL: And he does not know how to read nor write, so his signature on that confession would be invalidated and this confession should be suppressed.
“THE COURT: All right. He can come down now, and you bring your witness in.
“MR. BEERS: [Counsel for the State] All right.
“MR. CARROLL: Also, Your Honor, he asked for his lawyer several times and never was provided one after specifically asking for one.
“THE COURT: Let’s find out.”
Officer C. E. Murphy then took the stand and was interrogated by counsel for the State. He identified defendant’s confession as one made without force, threats or any coercion whatever by the witness or anyone in his presence and without any gifts, rewards, or hope of reward to get him to sign the statement. He testified the statement was signed freely and voluntarily. He also testified that he explained to the defendant his rights and that the defendant freely and voluntarily signed the acknowledgement of such explanation and an understanding thereof. Defendant cross-examined the witness as to whether there was any physical abuse of defendant. During cross-examination, the court asked the witness if defendant ever asked for a lawyer, and the witness replied in the negative. He further said that defendant never called the name of his lawyer. He said that there was an odor of alcohol on defendant at the time but that it did not appear to the witness that defendant was intoxicated. Cross-examination continued and the hearing was concluded as follows:
“Q And this statement that you got, it wasn’t a verbatim statement. It was just a statement made in your words?
“A The statement was typed verbatim as he told it to me, sir.
“MR. CARROLL: Nothing further.
“THE COURT: All right. Thank you, sir.
“MR. CARROLL: Judge, I don’t believe the State has presented any evidence that shows that this man could understand what he was signing.
“THE COURT: Motion denied. Bring in the Jury.”
The jury then returned to the courtroom, opening statements were made by the attorneys, and the presentation of evidence was commenced and continued until the State rested its case. Then out of the pres *554 ence of the jury the court asked if there was any motion, and defendant’s attorney moved to exclude the evidence, which motion was denied. The record then continues:
“MR. HUTCHINSON: Judge, We’d like to move again to exclude the confession. I wasn’t here on the Motion to Suppress.
“THE COURT: Well, I — to me it was a question for the Jury. You all cross examined as to whether it was proper or not, but he testified, and it was my opinion that it was taken properly, and I again deny you motion.
“Have you all agreed that the jury can go home?
“MR. HUTCHINSON: Yes, Your Honors. . . . ”
The jury was then admonished as to its duties, told to return at 9:00 A.M. the next morning, and the court was then adjourned. At that time it was 5:28 P.M.
We have attempted hereinabove to set forth all portions of the record that have a material bearing upon both the issue raised by appellant as to claimed abridgement of his constitutional rights by reason of the “tone and atmosphere” established by the court on the hearing on the motion to suppress, and the related issue raised by appellant as to the admissibility in evidence of defendant’s confession.
We need not decide the question of any implication by appellant attributable to the court’s statement twice that it would only take “about two minutes” to hear the motion to suppress. It is obvious that the court was greatly interested in dispatching without undue delay the business of the court, which in and of itself is highly creditable. On the other hand, it can be readily seen that undue haste can at times cause serious injustice. We agree with appellant that the statement as to “two minutes” was indicative of a haste that could cause such injustice, that there was more involved in defendant’s motion to suppress and his objection to the admission in evidence of defendant’s confession than could be satisfactorily resolved in two minutes. On the other hand, we do not think the court was intentionally doing more than to impress vividly upon the parties the propriety of their moving along with as much dispatch as reasonably possible with the duties at hand, especially in view of the court load at the time and the fact that, according to the apparent view of the court, the absence from the courtroom of one of the attorneys for defendant was tending to delay the trial.
Before defendant’s confession was admitted in evidence, defendant should have been given the right, if he had so desired, to testify, as he did before the evidence was concluded, that his confession was not voluntary and that he was not apprised of his constitutional rights. From the record as to the testimony of defendant on his motion to suppress, some might draw an inference of a denial of that right, such as the denial thereof in Harris v. State, 280 Ala. 468, 195 So.2d 521 (1967), wherein it was stated:
“The defendant was entitled to tell his story to the judge, regardless of how bizarre, farfetched or unbelievable the judge might regard it. There could have been something which he might have said later that would have caused the court to doubt the voluntariness of the confession. But when his testimony was halted and he was not permitted to continue, the error in cutting off his evidence was prejudicial error.”
The statement by the trial court while defendant was still on the stand on the motion to suppress, “All right. He can come down now, and you bring your witness in,” upon close study of the context of the record at that point, and all the circumstances in the case, convinces us that the court was not declining, as the trial court did in Harris, supra, to hear further testimony of the defendant. The order of presenting testimony on the question of the admissibility of a confession is opposite from the order thereof in the instant case. As confessions are presumably involuntary, the burden is upon the State to show that one is voluntary. We conclude that the *555 trial court had that principle in mind at the time and that it was in effect saying that the State should then present its side of the issue, for that ,if it could not do so, if it could not show by affirmative evidence that the confession was voluntary, the confession should be suppressed.
At the conclusion of the testimony of the State’s witness unequivocally showing a voluntary confession, which when considered alone conclusively established the admissibility of the confession, defendant offered no further testimony on the hearing of the motion to suppress. At that time there was no substantial evidence of any violation of defendant’s rights against self-incrimination or his constitutional right to counsel without any expense to himself. This also can be said as of the time of defendant’s renewal of its motion to suppress upon the conclusion of the State’s case, for the record shows that the defendant had not at that time testified on the trial of the case. He had presented no evidence in substantial conflict with what the officer had testified on the hearing on the motion to suppress and what the evidence for the State had shown prior to the admission in evidence of defendant’s confession.
At the conclusion of the trial, but not prior to the rulings of the court as to the admission in evidence of the confession, there was strong evidence to the effect that defendant had not voluntarily and understanding^ signed a confession and had not voluntarily and understandingly waived his right against self-incrimination and his right to counsel, but no motion was made to exclude the confession after such state of the evidence. We find that there was no error of the court as to any ruling invoked of it by the defendant as to the admissibility in evidence of the confession.
There is nothing in the record to indicate, and there is no contention, that if after defendant had testified fully as to the confession, the trial court had been requested to rule again as to its admissibility, it would not have ruled, as it had previously ruled, that the confession, as well as the purported waiver of rights that defendant signed, was admissible in evidence.
The determination by the trial court that a confession was knowingly, understandingly and voluntarily made will not be disturbed unless it appears to the court on appeal that the conclusion reached by the trial judge was palpably contrary to the weight of the evidence or is manifestly wrong. Baldwin v. State, Ala.Cr.App., 372 So.2d 26 (1978), aff’d 372 So.2d 32 (1979); Garrison v. State, Ala.Cr.App., 372 So.2d 55 (1979); Lamar v. State, Ala.Cr.App., 370 So.2d 349 (1979). We find no reversible error in the action of the trial court as to the confession.
The evidence was sufficient to support the verdict of the jury. In addition to defendant’s confession, there was almost conclusive evidence of the corpus delicti, as well as positive evidence of defendant’s presence in the burglarized store and his removal therefrom of some of the stolen property.
We find no error in the record. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is
AFFIRMED.
All the Judges concur.

. The quotation is from the reporter’s transcript — somewhat variant in punctuation, but not in substance, from the signed confession.