[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 119 
Brian Keith Baldwin was indicted for the capital offense of robbery when the victim is intentionally killed by the defendant. At trial, the jury found the appellant "guilty as charged in the indictment." The trial judge, after weighing the aggravating and mitigating circumstances in this case, fixed the appellant's punishment at death by electrocution. See Appendix A, hereto attached and made a part hereof.
The appellant's conviction was originally affirmed by this court in Baldwin v. State, 372 So.2d 26 (Ala.Cr.App. 1978) and by the Alabama Supreme Court at 372 So.2d 32 (Ala. 1979). The United States Supreme Court, 448 U.S. 903, 100 S.Ct. 3043,65 L.Ed.2d 1133, vacated the judgment and remanded the case for further consideration in light of Beck v. Alabama,[1]447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). Thereafter, the Alabama Supreme Court, 405 So.2d 698, remanded the case to this court, 405 So.2d 699, for further consideration and we reversed and remanded on authority of Beck. The State has requested a rehearing and for the reasons set forth below, we once again affirm this appellant's judgment of conviction and sentence of death.
The facts of this case as set out in this court's original opinion and quoted by the Alabama Supreme Court, are as follows:
 "The victim of the appellant's vicious crime was a sixteen-year-old girl named Naomi Rolon. On November 25, 1976, she was driving across town in Hudson, North Carolina, to visit her father who was in a local hospital. She was abducted before reaching her destination by the appellant and his companion, Edward Horsley, both of whom were escapees from a North Carolina prison camp at the time. They took control of her automobile and drove to Charlotte, North Carolina, where they attempted to rape her and to choke her to death. They stripped her of all her clothing except her shoes and socks. She was stabbed with a knife in various parts of her body and then locked in the trunk of the automobile she had been driving. Baldwin and Horsley then drove the car through South Carolina to Atlanta, Georgia, where they spent the night. They next drove to Montgomery, Alabama, on Interstate Highway 85 and then proceeded to Camden, Alabama, located in Wilcox County. The victim remained locked in the trunk of the car during the entire trip.
 "In Camden, the appellant stole a pickup truck which contained a hatchet. Horsley drove the automobile, and the appellant drove the truck to an isolated spot in Monroe County. There they removed the victim from the trunk of the car, and Horsley attempted to run the car over her. After several unsuccessful attempts to kill the victim with the automobile, the appellant took the hatchet from the trunk and killed her with a blow leaving a gaping wound in the base of her neck. The two killers were later arrested in Lanett, Alabama, where they were traveling in the stolen truck. The automobile tag from the victim's car was found in the truck which appellant was driving. Both were transported to the Wilcox County Jail on the truck theft charge."
Baldwin v. State, 372 So.2d 26 (Ala.Cr.App. 1978).
 I
The first issue the appellant raises is essentially the same issue he raised on his initial appeal and which was addressed both by this court and the Supreme Court in the two previous opinions. However, *Page 120 
this court must now analyze this issue in a different light because of Beck.
The principal question this court must resolve is whether the appellant is entitled to a new trial because the preclusion clause was in effect at the time of his conviction for the instant offense. The appellant contends that although the intentional killing most probably took place in Alabama, the robbery occurred in North Carolina. If such was the case, the appellant claims the State of Alabama did not have jurisdiction over the robbery and thus the appellant could have only been convicted of first degree murder at most in Alabama. Thus, the jury should have been entitled to an instruction on the lesser included offense of murder.
The United States Supreme Court in Hopper v. Evans,456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982) stated:
 "Beck held that due process requires that a lesser included offense instruction be given when the evidence warrants such an instruction. But due process requires that a lesser included offense instruction be given only when the evidence warrants such an instruction. The jury's discretion is thus channelled so that it may convict a defendant of any crime fairly supported by the evidence."
Thus, "`[t]he jury must be permitted to consider a verdict of guilt of a non-capital offense' only when `the evidence wouldhave supported such a verdict.' (Additional emphasis supplied.)Hopper v. Evans, supra." Bryars v. State, 456 So.2d 1122
(Ala.Cr.App. 1983).
Following the United States Supreme Court's decisions in Beck
and Hopper, the Alabama Supreme Court in Cook v. State,431 So.2d 1322 (Ala. 1983) stated that in the determination of whether an appellant, who was convicted of a capital offense when the preclusion clause was in effect, is entitled to a new trial, the test to be applied is:
 "(1) Was there any evidence presented at trial upon which a conviction of a lesser included offense could have been based? (2) If not, has the defendant suggested any plausible claim which he might conceivably have made, had there been no preclusion clause, that is not contradicted by his own testimony at trial? If the answer to both of these questions is no, then a conviction at trial is due to be affirmed."
The evidence at trial conclusively established that the appellant and his companion took control of the vehicle in which the victim was driving in North Carolina. There was some conflicting evidence presented as to whether the victim was killed in Alabama or North Carolina. The appellant urges that if the robbery occurred in North Carolina and the killing took place in Alabama, then he could only be convicted of murder in Alabama and robbery in North Carolina because the two acts were separate offenses. Thus, reversible error occurred because the jury was prohibited by the preclusion clause from considering the lesser included offense of murder.
We do not agree. As Judge Bookout stated in his opinion in this appellant's original appeal, quoting from the opinion in the appellant's companion's appeal [Horsley v. State,374 So.2d 363 (Ala.Cr.App. 1978)]:
 "`Notwithstanding the importance of robbery as an essential element of the crime charged, it did not constitute the crime charged in the indictment or a crime proscribed by the death penalty statute. No crime proscribed by that statute falls short of an intentional killing. Each of the fourteen crimes enumerated in the statute has within it the culminating factor of an intentional homicide. The statute is for the prevention and punishment of homicides committed under legislatively determined aggravating circumstances. It is impossible to complete, to consummate, any of the fourteen crimes enumerated without the intentional[ly] taking of the life of a human being . . .'"
Baldwin v. State, 372 So.2d 26 (Ala.Cr.App. 1978). *Page 121 
Justice Torbert, reiterating this position in his opinion in this case said:
 "The crime of robbery when the victim is intentionally killed is a single offense beginning with the act of robbing or attempting to rob and culminating with the act of intentionally killing the victim. The offense consists of two elements, robbing and intentionally killing, but does not consist of two separate offenses. See Ex parte Clements, 370 So.2d 723 (Ala. 1979); Horsley v. State
[374 So.2d 363], [1 Div. 931] (Ala.Crim.App. 1978). Therefore, although the offense was commenced in North Carolina, it was not consummated until Naomi Rolon was killed in Monroe County, Alabama."
Baldwin v. State, 372 So.2d 32 (Ala. 1979).
Therefore, the robbery at issue was a continuing offense which began in North Carolina and culminated in Alabama. Thus, this issue was resolved by the jury which properly found that the robbery and the killing occurred in Alabama.
Furthermore, even if there was evidence that both the robbery and intentional killing took place in North Carolina, the appellant would still not be entitled to request a lesser included offense instruction. If both of these crimes were committed in North Carolina, then Alabama would have no jurisdiction over the case and the appellant could not have been convicted of either offense in Alabama. Whether the killing took place in North Carolina or Alabama was a question for the jury which they properly resolved after considering all of the evidence.
After reviewing the evidence in this case and the theories which the appellant has raised in light of Beck, and the cases which have followed, we conclude the appellant was not due an instruction on the lesser included offense of murder.
 II
The appellant urges that the prosecutor's remark during his opening statement concerning the appellant's escape from a prison camp in North Carolina constitutes error.
Generally, evidence of other crimes which a defendant has committed is not admissible at his trial on a particular offense. McElroy's Alabama Evidence, § 69.01 (1), Third Edition (1977). However, the prosecutor's statement falls within one of the widely recognized exceptions to the general rule.
 ". . . [I]f two or more crimes constitute one criminal transaction, evidence of the other crime or crimes is admissible. In Parsons v. State, 251 Ala. 467, 477, 38 So.2d 209, it was stated:
 `But the rule is that if several crimes in fact constitute one criminal transaction, evidence of all such crimes may be given as part of the res gestae of the offense with which defendant is charged. Allison v. State, 1 Ala. App. 206, 55 So. 453; Askew v. State, 6 Ala. App. 41, 60 So. 455; Ingram v. State, 39 Ala. 247, 84 Am.Dec. 782.'
 "Judge McElroy, citing numerous supporting authorities, has the following to say on the subject:
 `Evidence of accused's commission of another crime is admissible if such other crime is inseparably connected with, or is a `part of the res gestae' of the, now-charged crime; or, if such other crime and the now-charged crime are parts of one continuous transaction or one continuous criminal occurrence . . .' McElroy, Law of Evidence in Alabama, § 69.01 (3)."
Brown v. State, 338 So.2d 1050 (Ala.Cr.App. 1976).
From a review of the record, it is clear to this court that this escape commenced the series of events that eventually led to the killing of the victim herein. Thus, the prosecutor's remark was properly allowed.
Furthermore, the appellant's statement was later admitted into evidence and in this the appellant told of his escape from the prison camp and of the unfortunate sequence *Page 122 
of events that followed the escape. There is no error on this issue.
 III
The appellant contends one of the prospective jurors, Julia Preyear, was improperly excluded from the jury venire and asserts she was excused solely because of her opposition to the death penalty, and not because of the requirements set out inWitherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770,20 L.Ed.2d 776 (1968).
The relevant portion of the record is set out below:
 "THE COURT: Mr. Pearson and Mr. Morrow, they seem to be qualified. Do you have any additional questions from the State?
 "MR. PEARSON: We have a couple. We would like to know if anybody has any religious scruples, or any other scruples, about fixing punishment at death in this case if the State proves beyond a reasonable doubt that the defendant is guilty.
 "THE COURT: Ladies and gentlemen of the jury, do any of you have any scruples, religious or otherwise, which would prevent you from sentencing this defendant to death by electrocution, if, in your mind, his guilt had been established beyond a reasonable doubt and to a moral certainty? (No response.)
 "THE COURT: Do you understand the question? Do any of you have any scruples, religious or otherwise, if you were selected as a juror in this case that you could not pronounce the judgment of execution against this defendant if his guilt had been established beyond a reasonable doubt and to a moral certainty?
"A JUROR: Yes, sir.
"THE COURT: Are you a juror?
"A JUROR: Yes, sir.
"THE COURT: What is your name, please?
"A JUROR: Julia Preyear.
 "THE COURT: Mrs. Preyear, stand up and tell me what you want to tell me, please.
 "THE JUROR, JULIA PREYEAR: I just don't believe in capital punishment.
"THE COURT: You don't believe in capital punishment?
"THE JUROR, JULIA PREYEAR: No, sir.
 "THE COURT: Mrs. Preyear, are you telling this Court that if you were on this jury and if you were convicted beyond a reasonable doubt of the guilt of this defendant that you could not or would not follow the law and fix his punishment at death? Is that what you are telling this Court?
"THE JUROR, JULIA PREYEAR: Yes, sir, that's right.
"MR. PEARSON: We would challenge her, Judge.
 "THE COURT: The challenge will be sustained as to Mrs. Julia Preyear." (R. 24-25).
In Wilson v. State, 371 So.2d 932 (Ala.Cr.App. 1978), affirmed 371 So.2d 943 (Ala. 1979), vacated on other grounds,448 U.S. 903, 100 S.Ct. 3042, 65 L.Ed.2d 1133 (1980), remand,405 So.2d 696 (Ala. 1981), Judge Bowen stated:
 "A prospective juror may be excused for cause where he has been examined by the trial judge and a determination made that the juror's feelings as to capital punishment are sufficiently strong so that he would automatically refuse to impose a death sentence regardless of the evidence produced at trial and despite of the instructions of the trial court. Witherspoon, 391 U.S. at 522, 88 S.Ct. at 1777. In accordance with the general law that allows a juror who is not impartial to be challenged for cause, a prospective juror may properly be excused for cause where his attitude toward the death penalty would prevent him from making an impartial decision as to the defendant's guilt. Witherspoon, 391 U.S. 522, n. 21, 88 S.Ct. 1770 [1777, n. 21]." (Footnotes omitted).
The prospective juror, Mrs. Preyear, made it very clear to the trial judge that she could not sentence the appellant to death if she were convinced the appellant *Page 123 
was guilty beyond a reasonable doubt. Certainly, it would be absurd to believe that if she were not so convinced of his guilt beyond a reasonable doubt, that she would consider fixing his punishment at death.
The appellant claims, citing Witherspoon, supra, that a prospective juror can only be excluded from the venire "if he is irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings."
However, it is well recognized that the exact words inWitherspoon do not have to be used when the trial judge examines the prospective jurors concerning their views on the imposition of the death penalty. Wilson v. State, supra.
From our review of the pertinent portion of the record, we are convinced that Mrs. Preyear unequivocably told the trial judge that she could not, under any circumstances, impose the death penalty on this appellant, and that she would automatically vote against its imposition. We conclude that the trial judge's examination of Mrs. Preyear concerning her feelings about capital punishment was proper and that her subsequent exclusion did not offend the principles ofWitherspoon.
 IV
The appellant argues that the trial judge, during his determination of this sentence, improperly considered two non-statutory aggravating circumstances, and therefore, his sentence of death should not be permitted to stand.
The trial judge in his written findings of fact cited five aggravating circumstances and one mitigating circumstance. (See Appendix A). Three of the aggravating circumstances fall clearly within the list of aggravating circumstances enumerated in § 13-11-6, Code of Alabama 1975 (the Code section in effect at the time of the appellant's conviction) and § 13A-5-49, Code of Alabama 1975. We must now examine more closely the other two aggravating circumstances to determine if they were improperly considered.
 A
The first finding that the appellant claims the trial judge should not have considered is set out below:
 "(b) The Court further finds that the defendant had previously plead guilty to a felony in the state of North Carolina involving the use of violence to the person of the victim and was sentenced to five years imprisonment in the North Carolina penitentiary as a youthful offender." (R. 308).
Clearly, a defendant's conviction for a crime of violence can be an aggravating circumstance. Ala. Code § 13-11-6 (2) (1975); Ala. Code § 13A-5-49 (2) (1975). The question before us is whether the appellant's adjudication as a youthful offender prohibits consideration of that conviction as an aggravating circumstance. Under the Alabama statute, after one is adjudged a youthful offender, any determination of guilt shall not be deemed a conviction,[2] and thus, could not be an aggravating circumstance under § 13-11-6 (2) or § 13A-5-49 (2) Code of Alabama (1975). However, the appellant was not adjudicated as a youthful offender in Alabama, but in North Carolina. Therefore, the laws of that state regarding youthful offender status should here govern.
As the state correctly points out in its brief, the intent of the youthful offender statute in North Carolina is completely different from Alabama's youthful offender statute.
In Alabama, the proceedings under the Youthful Offender Act are not criminal in nature and are used to protect persons in a specified age group, who would otherwise be tried as adults, from the harsh consequences of the criminal adjudicatory *Page 124 
process. Raines v. State, 294 Ala. 360, 317 So.2d 559 (1975).
 "The Youthful Offender Act is intended to extricate persons below twenty-one years of age from the harshness of criminal prosecution and conviction. It is designed to provide them with the benefits of an informal, confidential, rehabilitative system. A determination that one is a youthful offender (1) does not disqualify the youth from public office or public employment, (2) does not operate as a forfeiture of any right or privilege, (3) does not make him ineligible to receive any license granted by public authority, and (4) shall not be deemed a conviction of crime; and (5) the record shall not be open to public inspection except upon permission of the court. Title 15, § 266 (6), Code of Alabama."
Raines v. State, supra. See also commentary in § 15-19-1
through § 15-19-7, Code of Alabama 1975.
The purpose of North Carolina's Youthful Offender Statute is clearly set out in § 148-49.10, N.C.Gen.Stat.:
 "The purposes of this Article are to improve the chances of correction, rehabilitation and successful return to the community of youthful offenders sentenced to imprisonment by preventing, as far as practicable, their association during their terms of imprisonment with older and more experienced criminals, and by closer coordination of the activities of sentencing, training in custody, parole, and final discharge. It is the intent of this Article to provide the courts with an additional sentencing possibility to be used in the court's discretion for correctional punishment and treatment
in cases, where in the opinion of the court a youthful offender requires a period of imprisonment, but no longer than necessary for the Parole Commission to determine that the offender is suitable for a return to freedom and is ready for a period of supervised freedom as a step toward unconditional discharge and restoration of the rights of citizenship." (Emphasis added).
In State v. Niccum, 293 N.C. 276, 238 S.E.2d 141 (1977), the Supreme Court of North Carolina stated:
 "In summary, the purposes of Article 3A[3] as stated in G.S. 148-49.1 were to improve the chances of rehabilitating youthful offenders: (1) by segregating them, as far as practicable, from older and more experienced criminals; and (2) by providing the court with `an additional sentencing possibility' to be used for correctional punishment and treatment in cases where, in its opinion, a youthful offender required imprisonment only for the time necessary for the Board of Paroles to determine his suitability for a return to supervised freedom. Article 3A, ipsissimis verbis, could have no application to capital cases.
 "As defined in Article 3A, `a "youthful offender" is a person under the age of 21 at the time of conviction, and a "committed youthful offender" is one committed to the custody of the Commissioner of Correction under the provisions of this Article.' G.S. 148-49.2.
 "Upon a youthful offender's conviction of an offense punishable by imprisonment G.S. 148-49.4 authorized the court, `in lieu of the penalty of imprisonment otherwise provided by law,' to sentence him to the custody of the Commissioner of Correction for supervision and treatment pursuant to Article 3A until discharged at the expiration of the maximum term imposed or released conditionally or unconditionally by the Board of Paroles." (Footnote and emphasis added).
It is clear from reading the above cited statute and case that the North Carolina Youthful Offender Statute serves a different purpose than the Alabama statute. A determination of guilt of a youthful offender in North Carolina is a conviction, *Page 125 
the same as if he had been tried and found guilty as an adult. The only preferential treatment a youthful offender receives is in the sentencing procedure. Therefore, we conclude that the North Carolina legislature, in inacting their youthful offender statute, intended an adjudication of guilt of a youthful offender to be a conviction, as the term is commonly used. Since the appellant was convicted and sentenced as a youthful offender in North Carolina, we must also consider the appellant's determination of guilt of that offense as a conviction. The trial judge herein properly considered the appellant's conviction under the North Carolina Youthful Offender Statute as an aggravating circumstance.
 B
The second finding which the appellant contends was improperly considered as an aggravating circumstance is as follows:
 "(c) The Court further finds that the defendant was previously charged in the state of North Carolina with the offense of kidnapping and rape, which said offenses were disposed of in juvenile proceedings by defendant being adjudged delinquent by reason of the charge of assault to commit rape." (R. 309).
Clearly, rape and kidnapping are violent offenses but we cannot analyze an adjudication of guilt in a juvenile proceeding in the same manner as we did as to the appellant's youthful offender conviction. In North Carolina, as in Alabama, juvenile proceedings are not criminal in nature and a determination of delinquency is not a conviction. Section 7A-638, N.C.Gen.Stat.; In re Drakeford, 32 N.C. App. 113,230 S.E.2d 779 (1977). The appellant's adjudication of guilt in the juvenile proceedings does not fall within one of the aggravating circumstances enumerated in § 13-11-6 or §13A-5-49, Code of Alabama 1975. Thus, the question we have before us is whether the appellant's sentence of death can constitutionally be permitted to stand when the trial judge considered an aggravating circumstance not set out in the Alabama code.
Current case law in Alabama indicates that when a trial judge relies upon an invalid aggravating circumstance, the case must be remanded to the trial court for a new sentencing hearing. See Ex Parte Bracewell, 407 So.2d 853 (Ala. 1981) and Judge Bookout's special concurrence in Bracewell v. State,407 So.2d 848 (Ala.Cr.App. 1979); Johnson v. State, 378 So.2d 1164
(Ala.Cr.App. 1979). But see Mack v. State, 375 So.2d 476
(Ala.Cr.App. 1978) (wherein this court affirmed the death sentence where there was only one valid aggravating circumstance and several invalid aggravating circumstances).
The trial judge's reliance on the non-statutory aggravating circumstance was clearly error. However, in light of two recent United States Supreme Court cases, Zant v. Stephens,462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) and Barclay v.Florida, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983), we must now determine if the consideration of the non-statutory aggravating circumstance constituted "harmless error."
The Barclay decision is more helpful in our analysis of this issue because the Florida death statute is so similar to Alabama's because it also requires the jury and the trial judge to weigh both the aggravating and mitigating circumstances in order to determine whether the death penalty is the appropriate sentence in a particular case. Fla.Stat.Ann. § 921.141 (Supp. 1976-1977). Furthermore, Florida law also forbids the consideration of non-statutory aggravating circumstances in the balancing process. Barclay v. Florida, supra.
In Barclay, the trial judge found several statutory aggravating circumstances but also relied on one non-statutory aggravating circumstance. The United States Supreme Court decided this was error but stated. ". . . [M]ere errors of state law are not the concern of this court, Gryger v. Burke,334 U.S. 728, 731, 68 S.Ct. 1256, 1257, 92 L.Ed.2d 1683 (1948), unless they rise for some other reason to the level of a denial of rights protected by the United *Page 126 
States constitution." Barclay v. Florida, 103 S.Ct. at 3428. The Supreme Court analyzed this issue to see if the consideration of the non-statutory aggravating circumstance rose to the level of a constitutional violation. They concluded that it did not.
 "There is no reason why the Florida Supreme Court cannot examine the balance struck by the trial judge and decide that the elimination of improperly considered aggravating circumstances could not possibly affect the balance. See n. 9, supra, `What is important . . . is an individualized determination on the basis of the character of the individual and the circumstances of the crime.' Zant, supra, 462 U.S. at ___, 103 S.Ct. 2743-44 (emphasis in original)."
Barclay v. Florida, supra.
However, the Supreme Court warned that in some cases, the consideration of improper aggravating circumstances will not be deemed "harmless error."
 "The thrust of our decisions on capital punishment has been `that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action.' Zant v. Stephens, 462 U.S. 862, ___, 103 S.Ct. 2733, 2741,77 L.Ed.2d 235
(1983), quoting Gregg v. Georgia, 428 U.S. 153, 189
[96 S.Ct. 2909, 2932, 49 L.Ed.2d 859] (1976) (opinion of Stewart, POWELL, and STEVENS, JJ.)"
Trial judges must not be allowed to rely on non-statutory aggravating circumstances that are so arbitrary and improper as to offend the Constitution. As long as the trial judge properly exercises his discretion and the facts indicating the death penalty are "so clear and convincing that virtually no reasonable person could differ," a harmless error analysis can be used. Barclay v. Florida, supra.
The safeguard in employing a harmless error analysis is that:
 ". . . Since, however, the trial judge must justify the imposition of a death sentence with written findings, meaningful appellate review of each such sentence is made possible, and the Supreme Court of Florida, like its Georgia counterpart, considers its function to be to `[guarantee] that the [aggravating and mitigating] reasons present in one case will reach a similar result to that reached under similar circumstances in another case . . . If a defendant is sentenced to die, this Court can review that case in light of the other decisions and determine whether or not the punishment is too great.' State v. Dixon, 283 So.2d 1, 10 ([Fla.] 1973). 428 U.S., at 248-251
[96 S.Ct. at 2965-66] (footnotes omitted) (emphasis supplied)."
Barclay v. Florida, supra.
The Barclay case differs from the case at bar in one important respect. In Barclay, the trial judge found no mitigating circumstances while the trial judge in this case found the appellant's age to be a mitigating circumstance.
A case has recently been decided by the United States Eleventh Circuit, which dealt with the same situation that we have in this cause. In Witt v. Wainwright, 714 F.2d 1069 (11th Cir. 1983),[4] the trial judge relied on two statutory aggravating circumstances, two non-statutory aggravating circumstances and only one mitigating circumstance, i.e., the defendant's age, in making his determination that the defendant should receive the death penalty. The court, in affirming the defendant's sentence of death, relied heavily on a Florida Supreme Court case, Brown v. State, 381 So.2d 690 (Fla. 1980). The Florida Supreme Court in that case stated:
 "Although improper aggravating circumstances (factors enumerated 1 and 2) went into the calculus of the trial judge's sentence decision and there was identified a mitigating circumstance (appellant's age), nevertheless, Elledge v. State, 346 So.2d 998
(Fla. 1977) does not *Page 127 
compel a reversal of the sentence judgment in this case. This is so because unlike Elledge, here `we can know' that the result of the weighing process would not have been different had the impermissible factors not been present. 346 So.2d at 1003.
 "The trial judge has told us in his order that the appellant's age, 22 years at the time of the offense and 23 years at the time of the trial, had only `some minor significance.' When this tenuous factor is juxtaposed against at least two well-founded aggravating circumstances it is beyond reason to conclude that the trial judge's decision to impose the death penalty would have been affected by the elimination of the unauthorized aggravating circumstances. This case then is dissimilar to Elledge, but like Hargrave v. State, 366 So.2d 1
(Fla. 1978), where the doubling up of aggravating circumstances was not fatal to the imposition of a death sentence even in light of the existence of two mitigating circumstances. Here, as there, ample other statutory aggravating circumstances exist to convince us that the weighing process has not been compromised."
The conclusion of the court was that,
 "[g]iven the imprecision of the criteria set forth in our capital punishment statute we must test for reasoned judgment in the sentencing process rather than a mechanical tabulation to arrive at a net sum. Hargrave v. State, supra; State v. Dixon, 283 So.2d 1
(Fla. 1973)."
Brown v. State, supra.
In Witt, the court distinguished another case, Goode v.Wainwright, 704 F.2d 593 (11th Cir. 1983), in which it was held the "harmless error" rule did not apply.
 "The case at bar differs from Goode in a subtle, yet significant manner. Unlike Goode, the instant case involves the existence of only a single and insubstantial mitigating circumstance, i.e., age.
". . .
 "While there is no doubt that the sentencing judge relied heavily upon the aggravating factor which the state procedures themselves forbid in imposing the death penalty upon Witt, it is not entirely apparent that all other defendants in Florida would have been entitled to resentencing under these circumstances, because of the existence of only a single and insubstantial mitigating circumstance, i.e., age. Consequently, it is also not entirely apparent that the concerns expressed in Goode over arbitrary and freakish executions should be invoked in Witt's case. See Gregg v. Georgia, 428 U.S. 153, 188-89, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976)."
Witt v. Wainwright, supra.
Furthermore, the Eleventh Circuit went on to say that, "we believe Witt's claims are properly encompassed within Barclay's
affirmance of Florida's procedures. Indeed, the concurrence inBarclay suggests that the reasoning of that opinion extends to the Florida Supreme Court's handling of the Brown case. See 463 U.S. at ___ n. 12, 103 S.Ct. at 3432 n. 12 (Stevens, J., concurring, joined by Powell, J.)."
In light of Witt and Barclay, it is our conclusion that it is proper to apply a "harmless error" analysis to the case at bar. The trial judge only considered one improper aggravating circumstance (the appellant's juvenile record) and the only mitigating circumstance (the appellant's age) was the same as was addressed by the Florida Supreme Court in Brown v. State, supra, and by the Eleventh Circuit in Witt.
Therefore, although the consideration of the non-statutory aggravating circumstance was clearly error, it was harmless error when viewed in light of the other aggravating circumstances in this case.
From our review of the trial judge's findings of fact, even in the absence of the non-statutory aggravating circumstance, the aggravating circumstances far outweigh the single mitigating circumstance. The trial judge properly exercised his discretion in sentencing this appellant to *Page 128 
death. Therefore, a new sentencing hearing is not required in this cause.
 V
This court is required by § 13A-5-53 (a) Code of Alabama, 1975 to independently review each case in which the sentence of death is imposed to determine.
 "(1) Whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor;
 "(2) Whether an independent weighing of the aggravating and mitigating circumstances at the appellate level indicates that death was the proper sentence; and
 "(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."
Alabama Code § 13A-5-53 (b), see also Beck v. State,396 So.2d 645 (Ala. 1980).
First, we do not believe the trial judge's sentence was imposed under any passion or prejudice or for an arbitrary reason.
Secondly, as we stated in our previous discussion, the statutory aggravating circumstances greatly outweighed the single mitigating circumstance and we do not feel that the trial judge's consideration of the non-statutory aggravating circumstance affected the balance to any significant degree.
Thirdly, the appellant's sentence of death has been imposed in similar cases. See Luke v. State, 444 So.2d 393
(Ala.Cr.App.), affirmed, 444 So.2d 400 (Ala. 1983); Ritter v.State, 429 So.2d 928 (Ala. 1983); Womack v. State,435 So.2d 754 (Ala.Cr.App. 1982), aff'd 435 So.2d 766 (Ala. 1983).
The State of Alabama's application for rehearing is herewith granted. The judgment of reversal by this court dated October 6, 1981 is hereby set aside.
For the reasons stated above, the judgment of conviction and sentence of death are hereby affirmed.
We have carefully again examined this record and find no error therein. Application for rehearing granted. Judgment affirmed.
AFFIRMED.
All the Judges concur.
[1] In Beck, the United States Supreme Court invalidated the preclusion clause in Alabama's death penalty statute because the jury was forbidden to consider any lesser included offenses. This clause was in effect at the time the appellant was tried and convicted.
[2] Ala. Code § 15-19-7 (a) (1975). There is no similar provision in the North Carolina statutes.
[3] Article 3A was repealed by the North Carolina Legislature 1977 N.C.Sess. Laws, C. 732, S. 1, and has been basically reincorporated in Article 3B (which includes § 148-49.10 through § 148-49.16, N.C.Gen.Stat.)
[4] The opinion of the Eleventh Circuit in Witt is an excellent discussion and analysis of the recent cases that have dealt with the issue of the consideration of non-statutory aggravating circumstances.
 APPENDIX A
STATE OF ALABAMA } } IN THE CIRCUIT COURT vs. } OF MONROE COUNTY, } ALABAMA BRIAN KEITH BALDWIN, } CASE No. CC-77-51 Defendant }
The Court, having conducted a hearing pursuant to Title 15, Section 342 (6) of the 1940 Code of Alabama, as amended, to determine whether or not the Court will sentence Brian Keith Baldwin to death or to life imprisonment without parole; and the Court having considered the evidence presented at the trial and at said sentence hearing; the Court makes the following findings of fact:
The Court first considers the aggravating circumstances as set out in Title 15, Section 342 (8) of the 1940 Code of Alabama, as amended:
 (a) The Court finds that the capital felony of robbery in the course of which the victim was intentionally killed was committed by the defendant while he was under sentence of imprisonment in the state of North Carolina but from which he had escaped.
 (b) The Court further finds that the defendant had previously pled guilty to a felony in the state of North Carolina involving the use of violence to the person of the victim and was sentenced to five years imprisonment in the North Carolina penitentiary as a youthful offender.
 (c) The Court further finds that the defendant was previously charged in the state of North Carolina with the offense of kidnapping and rape, which said offenses were disposed of in juvenile proceedings by defendant being adjudged delinquent by reason of the charge of assault to commit rape.
 (d) The Court further finds that the capital felony was committed while the defendant was in the commission of robbery *Page 129 
or flight after committing the said crime of robbery.
 (e) The Court further finds that under the circumstances of this case as revealed by the record, the capital felony was especially heinous or atrocious or cruel.
The Court now considers mitigating circumstances as described in Title 15, Section 342 (9) of the 1940 Code of Alabama, as amended.
 (a) The Court finds the only mitigating circumstance to be the age of the defendant at the time of the commission of the crime, to-wit, eighteen.
The Court having considered the aggravating circumstances and the mitigating circumstances and after weighing the aggravating and mitigating circumstances, it is the judgment of the Court that the aggravating circumstances far outweigh the mitigating circumstances and that the death penalty as fixed by the jury should be and is hereby accepted.
It is therefore Considered and Adjudged by the Court that Brian Keith Baldwin is guilty of the capital felony charged in the indictment, and specifically of intentionally killing Naomi Rolon during the robbery or attempt thereof of the said Naomi Rolon, deceased.
It is therefore Ordered and Adjudged that you, Brian Keith Baldwin, suffer death by electrocution at any time before the hour of sunrise on the 9th day of December, 1977, inside the walls of the William C. Holman Unit of the Prison System at Atmore, Alabama, in a room arranged for the purpose of electrocuting convicts sentenced to death by electrocution.
It is therefore further Ordered and Adjudged by the Court that the Warden of William C. Holman Unit of the Prison System at Atmore, or in case of his death, disability, or absence, his deputy, or in the event of the death, disability, or absence of both the Warden and his deputy, the person appointed by the Commissioner of Corrections, at any time before the hour of sunrise, shall on the 9th day of December, 1977, inside the walls of the William C. Holman Unit of the Prison System at Atmore, in a room arranged for the purpose of electrocuting convicts sentenced to death by electrocution, cause to pass through the body of the said Brian Keith Baldwin, a current of electricity of sufficient intensity to cause his death, and the continuance and application of such current through the body of the said Brian Keith Baldwin, until the said Brian Keith Baldwin be dead. May God have mercy on your soul.
ORDERED this 9th day of September, 1977.
 /s/ Robert E.L. Key
Circuit Judge
 Thirty-fifth Judicial Circuit of Ala. State of Alabama