Brian Keith Baldwin was convicted in August 1977 of the capital offense of robbery during which the victim was intentionally killed. The punishment was fixed at death by electrocution. This court initially affirmed the conviction and sentence in Baldwin v. State, 372 So.2d 26 (Ala.Cr.App. 1978). The Supreme Court of Alabama affirmed in Baldwin v.State, 372 So.2d 32 (Ala. 1979). The United States Supreme Court vacated that judgment and remanded the case for further consideration in light of Beck v. Alabama, 447 U.S. 625,100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), in Baldwin v. Alabama,448 U.S. 903, 100 S.Ct. 3043, 65 L.Ed.2d 1133 (1980). The Alabama Supreme Court remanded the case to this court Baldwin v. State,405 So.2d 698 (Ala. 1981). After remand, this court initially entered a judgment reversing petitioner's conviction in Baldwinv. State, 405 So.2d 699 (Ala.Cr.App. 1991). After the United States Supreme Court's decision in Hopper v. Evans,456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982), this court granted rehearing and issued a new opinion reaffirming petitioner's conviction and sentence in Baldwin v. State, 456 So.2d 117
(Ala.Cr.App. 1983). The Alabama Supreme Court affirmed this decision in Ex parte Baldwin, 456 So.2d 129 (Ala. 1984). The United States Supreme Court also affirmed in Baldwin v.Alabama, 472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985).
Brian Keith Baldwin then petitioned for writ of error coram nobis and/or motion for relief from judgment in late 1985, and he amended his petition in October 1986 on the day of the hearing. Another hearing was held on January 28, 1987, on the petitioner's claims of ineffective assistance of counsel. The court issued an order denying relief on October 2, 1987 and this case was again submitted to this court.
The petitioner presented 11 claims which the trial court considered barred from coram nobis review because they could have been raised at trial or on direct appeal, but were not. They are:
 "Claim Two: Alleged Mandatory Death Penalty, paragraph 15(a) of the petition and paragraph 21 of the amendment to the petition.
 "Claim Five: Alleged Discriminatory Application, paragraph 15(d) of the petition.
 "Claim Six: Burden of Proof Standards, paragraph 15(e) of the petition.
 "Claim Seven: Appellate Review, paragraph 15(f) of the petition.
 "Claim Eight: Electrocution Execution Method, paragraph 15(g) of the petition.
 "Claim Nine: Constitutionality of Death Penalty, paragraph 15(h) of the petition.
 "Claim Ten: Witherspoon, — fair cross-section of jurors, paragraph 16 of the petition.
 "Claim Eleven: Witherspoon — fair cross-section of jurors at guilt stage, paragraph 17 of the petition.
 "Claim Twelve: Witherspoon — conviction prone jury, paragraph 18 of the petition. *Page 1105 
 "Claim Fourteen: Grand Jury Selection, paragraph 20(a) of the amendment to the petition.
 "Claim Fifteen: [Prosecutor's] Peremptory Strikes, paragraph 20(b) of the amendment to the petition."
We agree that these 11 claims were barred.
The circuit court ruled that three issues were presented and decided on direct appeal and, for that reason, cannot be considered on this coram nobis appeal. They are:
 "Claim One: Lesser Included Offenses, paragraph 10-14 of the petition. See, Baldwin v. State, 456 So.2d 117, 120-21 (Ala.Cr.App. 1983), aff'd, 456 So.2d 129, 132-34 (Ala. 1984).
 "Claim Three: Disproportionality, paragraph 15(b) of the petition. See, Baldwin v. State, 456 So.2d 117, 128 (Ala.Cr.App. 1983), aff'd, 456 So.2d 129, 140 (Ala. 1984).
 "Claim Four: Alleged Arbitrary Application, paragraph 15(c) of the petition. See, Baldwin v. State, 456 So.2d 117, 128 (Ala.Cr.App. 1983), aff'd, 456 So.2d 129, 140 (Ala. 1984)."
This ruling is correct.
Finally, appellant alleges ineffective assistance of counsel. It was on this issue that evidentiary hearings were held and depositions taken.
We here set out the circuit court order in this case, written by Hon. Robert E.L. Key, as it relates to this issue, and we adopt it as the opinion of this court:
"The test to be used in deciding claims of ineffective assistance is set out in Strickland v. Washington, 466 U.S. 668
[104 S.Ct. 2052, 80 L.Ed.2d 674] (1984). Ex parte Daniel,459 So.2d 948, 951 (Ala. 1984) [cert. denied, 471 U.S. 1009,105 S.Ct. 1878, 85 L.Ed.2d 170 (1985)]. In Strickland v.Washington, the Supreme Court held that, in order to make out a claim of ineffective assistance, a defendant must make a two-part showing:
 " 'First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.'
"466 U.S. at 687 [104 S.Ct. at 2064].
 "Trial Counsel
"Windell Owens represented Baldwin at trial. Owens has practiced law in Monroe County for over 39 years and during that time, including 1977, a substantial percentage of his practice has been criminal defense work. Owens is, and was at the time of trial, a capable and experienced criminal defense lawyer. Another attorney, Paul Harden, sat at counsel table during trial but was only minimally involved in the case.
"In preparation for trial, Owens met with Baldwin at least eight times. Owens and Baldwin discussed the facts of the case and Owens also questioned Baldwin about his family and personal history. Baldwin told Owens a version of the crime that matched his confession and never denied his guilt to Owens. Everything that Baldwin told Owens about his background is in the record at sentencing.
"Owens attempted to contact Baldwin's family. He both wrote and telephoned but was unable to make contact with any family member.
"Owens interviewed the officers who took Baldwin's confession. He also interviewed those witnesses that Baldwin gave him concerning the voluntariness of his confession. Owens only called those witnesses at the suppression hearing during trial because Baldwin insisted. Owens also interviewed Baldwin's co-defendant, Horsley, but gained no useful information.
"In discovery, Owens received everything he wanted from the State. He also *Page 1106 
went to the site where Naomi Rolon was killed.
"Owens developed a defense strategy of attacking the admission of Baldwin's confession and asserting that no robbery of the victim occurred in Alabama.
 "Specific Allegations
"Baldwin's first allegation of ineffective assistance was that trial counsel did not request a psychiatric examination for Baldwin. Owens did not request psychiatric examination because he did not think that such an examination was needed or would have been helpful. Owens based his decision not to request a psychiatric examination on his dealings with Baldwin. Owens never encountered any difficulty in discussing Baldwin's defense or the facts of the case with him. Owens relied not only on his 39 years of experience as a criminal defense attorney, but also his extensive experience in civil commitments in deciding not to pursue a psychiatric examination. Owens's decision not to request a psychiatric examination was a reasonable strategic decision which is not subject to second guessing. Strickland v. Washington, supra, at 690 [104 S.Ct. at 2066]. Owens's representation of Baldwin, thus, was not deficient and this claim of ineffective assistance is without merit for that reason alone.
"Additionally, Baldwin did not present any evidence to establish that, had Owens requested a psychiatric examination, it would have developed evidence favorable to Baldwin. Baldwin did not present any evidence to show that he suffered from any mental problems. Baldwin, thus, failed to establish a reasonable probability that, but for Owens's decision not to request a psychiatric examination, the outcome of his trial could have been different. This claim of ineffective assistance is without merit based on Baldwin's failure to prove prejudice.
"Baldwin's second allegation of ineffective assistance was the trial counsel did not move for a change of venue. Owens discussed seeking a change of venue with Baldwin but decided not to file a motion for change of venue. Owens based his decision on three factors. First, neither the victim nor Baldwin were from Monroe County and this crime had a lesser impact in the community than the murder of a local resident. Second, the news coverage in Monroe County had not been prejudicial and Owens did not think a change of venue would have been granted. Third, Owens had extensive knowledge of Monroe County jurors that he would not have in other counties. Owens made a strategic decision not to file a motion for change of venue. His decision did not render his performance deficient and this claim is without merit.
"Additionally, Baldwin failed to prove that he was prejudiced by Owens's decision not to seek a change of venue. Baldwin's evidence, the testimony of Steve Stewart and copies of some local newspaper articles, did not establish a reasonable probability that, but for the absence of a motion for change of venue, the outcome of his trial would have been different.
"Stewart testified that the robbery/murder of Naomi Rolon received more coverage in his paper than other crimes that year. The newspaper articles, petitioner's exhibit A, are factual accounts of the crime and the events surrounding trial and are not inflammatory or sensational. The fact that a case generates even widespread publicity does not warrant a change of venue. E.g., Waldrop v. State, 459 So.2d 953, 955
(Ala.Cr.App. 1983), aff'd, 459 So.2d 959 (Ala. 1984), [cert. denied, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985)];Sparks v. State, 450 So.2d 188, 191 (Ala.Cr.App. 1984). . . . Newspaper stories that are not inflammatory or sensational do not warrant a change of venue. Primm v. State, 473 So.2d 1149,1155 (Ala.Cr.App. 1985) . . .; McLaren v. State, 353 So.2d 24,31 (Ala.Cr.App.), cert. denied, 353 So.2d 35 (Ala. 1977). Baldwin's evidence failed to establish that he was entitled to a change of venue and, therefore, he has failed to establish a reasonable probability that, but for the absence of a motion for a change of venue, the outcome of his trial would have been different. Because he cannot show that he was prejudiced, this claim is without merit. *Page 1107 
"Baldwin's third allegation of ineffective assistance is that trial counsel did not obtain for sentencing expert testimony concerning the effects of Baldwin's drug use. At the evidentiary hearing, Owens testified that, based on his dealings with Baldwin, he never had any reason to think that Baldwin had any drug, alcohol or mental problems. While Baldwin testified that he told Owens about his past drug abuse, Owens testified that Baldwin did not tell him any history of drug abuse. Having observed both witnesses' demeanor, the Court finds that Owens's testimony is credible and Baldwin's is not. Baldwin failed to overcome the strong presumption that Owens's representation was within reasonable professional norms. See, Strickland v. Washington, supra [466 U.S.] at 689-90 [104 S.Ct. at 2065-66]. Thus, Baldwin has failed to prove that Owens's performance was deficient.
"Additionally, Baldwin did not prove that he was prejudiced by the absence of a request for expert assistance at trial. He presented no evidence at the evidentiary hearing to show any expert assistance was available at the time of trial or that any expert would have testified in his favor. Having proved nothing, Baldwin failed to establish a reasonable probability that, but for the absence of a request for expert assistance, he would have been sentenced to life without parole. Thus, he failed to show that he was prejudiced by counsel's performance.
"Baldwin's fourth allegation of ineffective assistance is that Owens's jury voir dire was inadequate. Owens did not conduct an extensive voir dire examination of the jury venire because he knew all of the venire members. He made a strategic decision to rely on his knowledge of the venire members, based on his 39 years of practice in Monroe County. Owens's decision was not unreasonable and did not render his performance deficient.
"The testimony of Baldwin's lawyer witnesses did not establish that Owens's performance was deficient. Richard Bell testified that he thought a more extensive voir dire was only necessary to preserve what Owens knew about the jurors for the record. Bell Deposition at p. 19-20. Bell thought Owens was ineffective, not because he doubted Owens's knowledge of the venire members, but because any claim for relief based on a juror's answers to voir dire questions which hespeculated might exist, was not preserved. Id., at pp. 28-29. Bell admitted that his criticism of Owens's decision to rely on his knowledge of the venire members was the result of hindsight. Id., at p. 40. Bell's willingness to second-guess another lawyer's strategic decision is not evidence that such a decision deprived Baldwin of a fair trial. Unlike Bell, the Supreme Court has recognized that '[t]here are countless ways to provide effective assistance in any given case.' Stricklandv. Washington, supra, at 690 [104 S.Ct. at 2066]. Bell's opinion, that a lawyer is ineffective for failing to make a record which in turn might show some unstated error, is precisely the sort of intrusive, hindsight-aided examination of a trial lawyer's performance that was rejected by the United States Supreme Court. Bell's opinion is of no weight and does not show Owen's performance to have been deficient.
"Baldwin's other lawyer witness, John Carroll, testified that voir dire was important to gain knowledge of the attitudes of potential jurors toward factors relevant to the case to be tried. Carrol Deposition at p. 36. He recognized that a lawyer who already knew the answers to voir dire questions would not need to ask questions. Id. While he thought it would be difficult to have sufficient knowledge to forgo extensive voir dire, he recognized that it would be possible for a lawyer to have such knowledge. Id. at p. 37. Like Bell, Carroll is simply a lawyer saying he would have done something differently. Owens, and not Bell or Carroll, was in the best position to judge what he knew [or] did not know about the jury venire. To the extent Carroll disagrees with Owens's decision, his opinion is of no weight and does not show Owens's performance to have been deficient.
"Again, Baldwin has not only failed to show that his lawyer's performance was deficient but also [has failed to show] that *Page 1108 
he was prejudiced. He presented no evidence to show that any helpful information could have been gained from a voir dire examination conducted to his lawyer witnesses' satisfaction. Because Baldwin utterly failed to show that his lawyer could have discovered helpful information by a longer voir dire, he has failed to establish that, but for Owens's decision to rely on his knowledge of the jurors, the outcome of his trial would have been different.
"Baldwin's fifth allegation of ineffective assistance is that trial counsel failed to present mitigation and to adequately prepare Baldwin for the sentencing hearing. Owens attempted to obtain information about Baldwin's background and his family but was unable to do so. Owens obtained a family history from Baldwin in one of his first meetings with Baldwin. Owens both wrote to and telephoned members of Baldwin's family in North Carolina but his letters were not answered and he was unable to reach anyone by telephone. Before the sentencing hearing, Owens met with Baldwin and attempted to prepare him for sentencing. As evidenced by his conduct at the sentencing hearing, Baldwin was not forthcoming with information. The absence of mitigation and Baldwin's testimony at sentencing is not attributable to a lack of effort on Owens's part, but rather to Baldwin's uncooperative attitude and Baldwin's family's unwillingness to help him.
"Neither of Baldwin's lawyer witnesses established that Owens's representation fell below professional norms. Carroll recognized that a lawyer cannot present mitigation that does not exist and that if Baldwin's testimony was all Owens had, then it was the best he could do. Carroll Deposition at p. 24. Carroll was not always able to develop mitigation in capital cases where he was the defense lawyer. Id., at p. 28. He agreed that the facts of a case controlled in determining what investigation to undertake. Id., at p. 31. Carroll did not know what Owens did or did not do in Baldwin's case. Id. at p. 32.
"Owens's investigation and preparation for sentencing clearly satisfies Carroll's opinion of what was necessary. Owens presented all of the mitigation he could through Baldwin's testimony. Owens was unable to present more because, under the facts of this particular case, there was no more to present.
"Bell's testimony, if anything, points out the problems Owens encountered in dealing with Baldwin. When Bell attempted to obtain a psychiatric examination in hopes of showing mitigation that could have been presented at trial, Baldwin fired him. Bell Deposition at pp. 10-11.
"Additionally, at the coram nobis hearing, Baldwin testified that he met once with Owens before sentencing at the jail for about ten minutes. He said that Owens asked him about his childhood. He denied Owens asking for sentencing witnesses. Baldwin testified that he did not know what was going on at sentencing.
"Baldwin's testimony is contradicted by Owens. As noted above, Owens obtained Baldwin's family history in one of his first interviews. Owens also spent a good deal of time attempting to prepare Baldwin for sentencing. The Court finds that Owens is a credible witness and that Baldwin is not.
"None of the evidence offered by Baldwin shows that Owens's performance was deficient.
"Baldwin also failed to prove that he was prejudiced by Owens's preparation for sentencing. Baldwin produced no mitigation at the evidentiary hearing. Nothing in the record shows that there was any mitigation to present beyond what Owens presented at trial. Thus, there is no reasonable probability that, but for Owens's performance, the outcome of Baldwin's trial could have been different. Because Baldwin did not show that he was prejudiced, his claim is without merit.
"Baldwin's sixth allegation of ineffective assistance is that trial counsel failed to ask the trial judge to recuse himself. This claim is frivolous. Baldwin has offered no theory, and cannot point to any facts, warranting a motion to recuse. Absent some evidence that recusal was warranted, Baldwin has failed to show that his lawyer's performance was deficient or that he was *Page 1109 
prejudiced by the absence of a recusal motion.
"Baldwin's seventh allegation of ineffective assistance is that trial counsel should have challenged the racial composition of the grand jury that indicted Baldwin. Owens thought that he checked into the racial makeup of the grand jury. He knew who was on the grand jury. Owens decided not to challenge the racial composition of the grand jury because he knew earlier attempts to do so had failed and he did not think he could succeed. Owens's strategic decision not to pursue a challenge to the makeup of the grand jury did not render his performance deficient.
"Additionally, Baldwin once again failed to establish prejudice because he introduced no evidence to show that there was any defect in the grand jury selection process or the racial composition of the grand jury. Baldwin never proved the racial makeup of the grand jury that indicted him. Baldwin did not establish a reasonable probability that, but for Owens's decision not to challenge the racial composition of the grand jury, the outcome of his trial would have been different. Because he did not prove that his lawyer's performance was deficient or that he was prejudiced by his lawyer's action, this claim is without merit.
"Baldwin's eighth allegation of ineffective assistance is that trial counsel failed to challenge the prosecution's use of peremptory strikes to remove black prospective jurors. Owens was aware of the State striking black prospective jurors but did not object because he did not think a challenge to the prosecution's strikes would succeed. At the time of trial,Swain v. Alabama, 380 U.S. 202 [85 S.Ct. 824, 13 L.Ed.2d 759] (1965), controlled challenges to prosecution peremptory strikes of black prospective jurors and a defendant had to prove that a prosecutor had systematically excluded, over time, all potential black jurors from service on petit juries. Id., at 223-24 [85 S.Ct. at 837-38]. It was not sufficient under Swain
to show that, in a single case, a prosecutor had used his peremptory strikes to remove all black prospective jurors. Owens's judgment that a challenge based on the State's peremptory strikes at Baldwin's trial would not succeed was, thus, correct and did not render his performance deficient.
"Additionally, Baldwin was not prejudiced by the absence of a challenge to the prosecution's peremptory strikes. At the evidentiary hearing, Baldwin proved that the prosecution struck all of the black potential jurors in his case. As noted above, this showing does not make out a violation underSwain and there is no reasonable probability that, but for Owens's decision not to challenge the prosecution's peremptory strikes, the outcome of his trial would have been different. The United States Supreme Court's decision in Batson v.Kentucky, [476 U.S. 79], 106 S.Ct. 1712 [90 L.Ed.2d 69] (1986), which changed a defendant's burden in challenging prosecution peremptory strikes, is not applicable to Baldwin because his conviction was final before Batson was decided. Allen v. Hardy, [478 U.S. 255], 106 S.Ct. 2878 [92 L.Ed.2d 199] (1986), Exparte Love, 507 So.2d 979 (Ala. 1987).
"None of Baldwin's allegations of ineffective assistance have merit and he is not entitled to relief on this claim.
 "CONCLUSION
"After consideration of all the evidence, the Court finds that Baldwin is not entitled to relief and [the court] will enter an order to that effect."
AFFIRMED.
All the Judges concur. *Page 1110